W. E. KELLEY *et al..* v. JOHN A. STEVENS.

No. 10286.

1. APPELLATE PRESUMPTION — *judgment for personal representative of deceased plaintiff, revivor presumed if record silent.* An action having been brought by two persons, as partners, one of whom died before the case came to trial, and a judgment having been rendered in favor of the survivor and the executors of the deceased partner as his successors in interest, it will be presumed, in the absence of any showing in the record to the contrary, that the action was duly revived before the trial.

2. EVIDENCE — *written computation made by witness from data furnished by party for whom he testified, inadmissible.* According to the testimony of the defendant, the plaintiffs' agreed to furnish him two bills of lumber at prices in gross, and thereafter agreed that they would furnish him at the same rates whatever more might be needed to finish his building. The defendant then introduced in evidence, over the objection of plaintiffs, a written computation, covering substantially the whole of the defendant's claims in the case, based on items furnished by himself and purported copies of the bills on which the bids were said to have been made, and made by a witness who testified that, from his knowledge of the lumber business, he could determine from the lumber bills the price at which each item in the bill bid on was furnished, and that the computation made by him was in accordance with such prices. *Held,* that the court erred in admitting the written computation.

Error from Finney District Court. Hon. A. J. Abbott, Judge. Opinion filed October 9, 1897. *Reversed.*

*Milton Brown,* for plaintiffs in error.

*A. J. Hoskinson* and *H. F. Mason,* for defendant in error.

ALLEN, J. A. P. Kelley and W. E. Kelley, partners as the Prairie Lumber Company, commenced this suit against John A. Stevens, to recover $4,943.03 with interest, which they claimed to be due them for lumber and other materials sold to Stevens and by him used in the construction of a four-story hotel and business

block in Garden City. The plaintiffs claimed a lien on the property, which they sought to enforce. The petition was filed in the District Court on the twenty-second of November, 1888, but the action was not tried until February, 1894. In the meantime A. P. Kelley died. The case was tried to a jury, and a verdict rendered in favor of the plaintiffs for $1,237.63, on which judgment was entered. The court denied the plaintiffs a lien on the building and lots. W. E. Kelley, the surviving partner, and the executors of the will of A. P. Kelley, have brought the case to this court, alleging errors in the record and asking that the judgment be reversed and a new trial ordered. A motion is made to dismiss the petition in error on the grounds : *First*, that more than one year has elapsed since the death of A. P. Kelley, without any proceeding having been taken to revive the action ; *second*, that the plaintiffs, by their acts subsequent to the rendition of the judgment, have waived or forfeited their right to further prosecute this proceeding ; they having claimed a lien under the judgment, in actions, to foreclose mortgages on property other than that in controversy in this case, to which they were made parties defendant. Neither of these grounds for dismissal appears to us well founded.

The action went to trial without any question as to the necessity for, or want of, revivor. In due time, without exception on the part of the defendant, but with exceptions by the plaintiffs, judgment was entered on the verdict, in favor of W. E. Kelley and the executors of the will of A. P. Kelley, deceased, as successors in interest of the Prairie Lumber Company. Although the case-made fails to show any order of revivor, we think the recognition of the right of the executors to prosecute the case to final judgment implies that a

1. Revivor of action presumed, when,

revivor had been duly made. Extrinsic proofs of docket entries have been filed, on the motion to dismiss, tending to show that a revivor was in fact had before the trial, but that no formal entry thereof was duly entered on the journal. If there was, in fact, a revivor in due time, the mere failure of the clerk to enter it on the journal would not deprive the plaintiffs of their rights, but a *nunc pro tunc* entry of the order might be directed by the court at any time.

In a case brought by one Sarah J. Heisey against Stevens, the Kelleys, and others, to foreclose a mortgage on other lands belonging to Stevens, the Kelleys filed an answer, in which they alleged the facts with reference to the commencement of this suit, the rendition of judgment in their favor for $1,237.63, the refusal to allow them a lien, that they claimed judgment for a larger amount, and that they had prosecuted proceedings in error in this court to reverse that judgment; and claiming that whatever judgment they might obtain on a final trial of the case would be a lien on all the property of Stevens from the twenty-second day of November, 1888, the date of the commencement of their action. The answer concluded with a prayer that the property in controversy in that case be sold, and that of the proceeds thereof a sum be paid into court sufficient to pay whatever judgment might finally be rendered in favor of the lumber company against Stevens. Answers of similar import were also filed by the Kelleys in other cases. In none of these pleadings do the plaintiffs in error recognize the justice or finality of the judgment of the District Court. They do not ask an enforcement of the judgment rendered in their favor, but rather that whatever judgment they may finally obtain, after a hearing in this court, may be declared a first lien on the property in controversy in those cases.

Nearly forty pages of the brief for the plaintiffs in error are devoted to specifications of error, most of which it would be a weary waste of time to mention. One matter of substance, however, stands out prominently in the record. The bill of items charged by the plaintiffs against the defendant, in the copy of the account attached to the statement for a mechanic's lien, foots up $15,421.35. Credits are given, amounting to $10,478.32, leaving a balance claimed to be due of $4,943.03. The correctness of this account was denied under oath. The plaintiffs experienced much difficulty in proving their account, owing to their system of bookkeeping and the loss of many of their books, and papers. Many of the rulings assigned as error are with reference to testimony offered by them. There was testimony tending to support their claims. The defendant admitted having purchased from them much lumber for his building, but denied some of the items and disputed the prices. He claimed, and testified on the witness stand, that he made a contract for the purchase of the materials with Mr. Gifford, the agent of the plaintiffs; that he first went to him with a bill for the first floor of the building, and asked him to figure on it and let him know what he would furnish it for delivered at the building as needed; that Gifford offered to furnish the bill for thirty-nine hundred dollars; that he did not know what became of that bill, but that it was copied into a book he had, at page 170; that, afterward, he changed his plan of the building, and concluded to build a hotel; that he went to Gifford with another bill and asked him for figures on that; that Gifford agreed to furnish that bill for $4,750; that it was agreed between them that, if it proved that there was not enough lumber figured in the bill, he should have whatever might be necessary to complete the building,

at the same rate ; and that it was agreed that all the
material in both bills should be No. 1. Stevens also
testified to changes subsequently made in various
items included in the bills. Among other things, to
flooring joists, which he stated he was to have at ten
per cent. above cost ; to flooring, which was changed
from white to yellow pine ; and to corrugated ceiling,
in place of that first ordered. There were also stair
rails, banisters, and newel posts. A part of the sec-
ond bill of lumber, on which Mr. Gifford's price was
made, was produced in evidence. The balance was
only proved by a purported copy on page 179 of Mr.
Stevens's book. Who made these copies, and whether
they were correctly made, does not appear from the
testimony. The prices fixed on the two bills were
lump sums, without any apportionment to the items.
Mr. Stevens testified that he would not undertake to
say that he knew every piece of lumber delivered at
the hotel building. It appears that he also bought
lumber for other buildings he was constructing, and
that much of the lumber used in the hotel was deliv-
livered to his foreman in charge of the work. The
defendant then put one C. E. Schneider on the stand,
who testified that he lived at Garden City and was
engaged in the lumber business. He was then asked,
whether, from his knowledge of the lumber business,
he could take the bill of lumber set out on page 170
of Mr. Stevens's book, and, assuming that a dealer
agreed to furnish that lumber for the lump sum
of $3,900, figure out how much of that sum would be
chargeable to each item. He answered that he could,
and also answered in the affirmative a similar question
with reference to the bill, on page 179 of the book,
to be furnished at the lump sum of $4,750. He was
then asked whether he could take the bills of lumber
set out in two exhibits offered in evidence, and tell

what they would figure out, if charged for at the same rates as the lumber in the bills referred to on pages 170 and 179 of the book, at the lump prices of $3,900 and $4,750 respectively.   To this he answered, "yes," and also answered that he could make a similar estimate of 834 pieces of dimension stuff furnished at a stipulated price.   He was then asked if he had ever made that computation, and said that he had, at Mr. Stevens's request.   After examination and cross-examination with reference to his method of making the computation, Schneider testified that he did not see the original estimate, and did not know what went in except what was told him by Mr. Stevens.   The defendant then offered in evidence, as his exhibit " B," the computation made by the witness, showing a long list of items carried out at computed prices, with a footing of a total amount of $11,328.42.   There had been another page of figuring by this witness, which was not offered.   The plaintiffs objected on many grounds to the introduction of this exhibit, but the objection was overruled and the exhibit admitted.

On what theory the court admitted this computation is nowhere disclosed.   The items, which cover six pages, are neither the same as those included in the plaintiff's account nor in any bill contained in the record.   All the data used in making the computation were furnished by Mr. Stevens. His statement as to the articles received was the sole source of information on that point, and, as to prices, Mr. Schneider himself undertook to fix them from the purported copies of the bills of lumber on which lump prices had been fixed.   The bare statement of the witness that, from his knowledge of the business, he could tell what price should be apportioned to each article in a mixed bill of lumber to be furnished at a gross sum, is not a safe

2. Written computation by witness inadmissible, when.

basis for a judicial determination of the value of his
figuring. It is by no means certain that the plain-
tiffs, in making their computation, figured on the
same basis, or apportioned the prices among the items,
as the witness did. We know of no rule of law mak-
ing such a computation evidence when reduced to
writing. It is possible that the witness was well in-
formed as to the value of the different articles in-
cluded in the bill. It would have been entirely
competent for him to have stated on the witness stand
what he knew about such values; and possibly he
might have given testimony furnishing a basis for
computing values of items, contained in the bills on
which the bids were made, which were not in fact fur-
nished, and other items, not in the bills, but in fact
furnished. But as his testimony was offered in the
form of an exhibit purporting to cover substantially
the whole subject of the controversy, it was altogether
incompetent and inadmissible. This exhibit would
be likely to, and probably did, appear to the jury as
a summary of, and the most important item in, the
testimony offered on behalf of the defendant. It
probably had a controlling influence in fixing the
amount of the verdict; and the error in its admission
compels a reversal of the case. Although no question
is raised in this court with reference to the propriety
of trying this case to a jury, we cannot refrain from
remarking that it involved the taking of a long ac-
count, something which a jury is seldom, if ever,
capable of doing satisfactorily. It ought to have been
tried by the court, or sent to a referee to take the ac-
count.

Complaint is made of the refusal of the court to sus-
tain the plaintiffs' claim of a lien. The evidence as
brought to this court fails to show that the statement
for a lien was filed within four months after the com-

pletion of the building, as required by the act of 1872, which was in force at the time the materials were furnished. What may be shown on a further trial cannot be known, and it is unnecessary to say anything further on the subject of the lien, except that the claim of the plaintiffs that the judgment in the case of the Bank of Garden City against Stevens and others is a determination of their right to a lien for any sum of money, cannot be sustained.

The judgment is reversed, and the cause remanded for a new trial.